Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page1 of 31

COOLEY GODWARD KRONISH LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
WHITTY SOMVICHIAN (194463) (wsomvichian@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

COOLEY GODWARD KRONISH LLP
SARAH BOOT (253658) (sboot@cooley.com)
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 550-6000
Facsimile: (858) 550-6420

Attorneys for Defendant
eBay Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL EWERT, on behalf of himself and for the benefit of all with common or general interest, any persons injured, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EBAY INC., and DOES 1 THROUGH 100, inclusive<br><br>Defendant. | Case No. 07 cv 02198 RMW (PVT)<br><br>**DEFENDANT EBAY INC.'S OPPOSITION TO PLAINTIFF MICHAEL EWERT'S MOTION FOR CLASS CERTIFICATION**<br><br>Date: March 19, 2010<br>Time: 9:00 a.m.<br>Judge: Hon. Ronald M. Whyte<br>Trial Date: Not yet set<br><br>**[ REDACTED VERSION ]** |
| THE MISSING LINK, INC., d/b/a BATH PLUS INC., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EBAY INC.,<br><br>Defendant. | Case No. 07 cv 04487 RMW (PVT) |

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

DEFENDANT EBAY'S OPP. TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-002198-RMW (PVT)

## Table of Contents

**Page**

I. INTRODUCTION ... 1
II. BACKGROUND ... 2
A. The Named Plaintiff ... 7
B. The Claims and Proposed Class at Issue ... 7
III. ARGUMENT ... 8
A. Legal Standards ... 8
B. Plaintiff's Claims Require Individualized Evidence of Whether Each Seller Knew and Accepted the Potential for Search Delays ... 9
1. Sellers Who Voluntarily Listed Items Knowing the Potential for Search Delays Have No Viable Claim. ... 9
2. There Is No Feasible Way To Litigate The Issues of Knowledge and Consent on a Class-Wide Basis ... 12
C. Individualized Issues Will Also Predominate In Proving Whether Plaintiff Is Entitled To Recover Any Damages Or Restitution ... 14
1. Plaintiff Has No Class-Wide Method To Prove Damages. ... 14
2. Plaintiff Has No Class-Wide Method To Prove That Class Members Are Entitled To Restitution ... 18
3. Plaintiff Cannot Demonstrate Which Listings Were "Delayed" Without Individualized Testimony ... 21
D. Plaintiff's CLRA Claim Would Also Require Individual Findings On the Consumer Status Of Each Putative Class Members ... 22
E. The Named Plaintiff Is Not An Adequate Class Representative And Does Not Have Claims Typical Of Many of The Proposed Class Members ... 23
F. A Class Action Is Not Superior to Other Methods of Resolution ... 24
G. Plaintiff Cannot Rely On Rule 23(b)(2) Because He Seeks Monetary Relief ... 24
IV. CONCLUSION ... 25

## TABLE OF AUTHORITIES

PAGE

**CASES**

*Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317 (9th Cir. 1997) ..... 23

*Buckland v. Threshold Enters., LTD.*, 155 Cal. App. 4th 798 (2007) ..... 11

*Caro v Procter & Gamble Co.*, 18 Cal. App. 4th 644 (1993) ..... 10

*Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005) ..... 8

*Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966 (2009) ..... 10, 11, 12

*Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663 (2006) ..... 19, 20

*Cortez v. Purolator Air Filtration Prods.*, 23 Cal. 4th 163 (2000) ..... 11, 19

*Day v. AT&T Corp.*, 63 Cal. App. 4th 325 (1998) ..... 18, 19

*Deiter v Microsoft Corp.*, 436 F.3d 461 (4th Cir. 2006) ..... 23

*Deitz v. Comcast Corp.*, No. C06-06352 WHA, 2007 WL 2015440 (N.D. Cal. July 11, 2007) ..... 9

*Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168 (9th Cir. 2007) ..... 8, 25

*Dunkin v. Boskey*, 82 Cal. App. 4th 171 (2000) ..... 21

*Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616 (S.D. Cal. 2007) ..... 12

*In re First Alliance Mortg. Co.*, 471 F.3d 977 (9th Cir, 2006) ..... 19

*In re GPU Antitrust Litig.*, 253 F.R.D. 478 (N.D. Cal 2008) ..... 18, 23

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page4 of 31

**TABLE OF AUTHORITIES**
(CONTINUED)

**PAGE**

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2009) ........ 8

*In re Live Concert Antitrust Litig.*, 247 F.R.D. 98 (C.D. Cal. 2007) ........ 14

*In re Med. Waste Servs. Antitrust Litig.*, No. 2:30MD1546, 2006 WL 538927 (D. Utah Mar. 3, 2006) ........ 17

*In re Paxil Litig.*, 218 F.R.D. 242 (C.D. Cal. 2003) ........ 25

*In re Tobacco II* 46 Cal. 4th 298 (2009) ........ 10, 11

*In re Wal-Mart Stores, Inc., Wage and Hour Litig.*, No. C 06-2069 SBA, 2008 WL 413749 (N.D. Cal. 2008) ........ 21

*Lazar v. Hertz Corp.*, 143 Cal. App. 3d 128 (1983) ........ 22

*Linder v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625 (D. Hawai'i 2008) ........ 18

*Linear Tech. Corp. v. Applied Materials*, 152 Cal. App. 4th 115 (2007) ........ 22, 23

*Lozano v. AT&T Wireless Servs., Inc.*¸ 504 F.3d 718, 736 (9th Cir. 2007) ........ 10

*Mahfood v. QVC, Inc.*, No. SACV 06-0659-AG, 2008 WL 5381088 (C.D. Cal 2008) ........ 25

*Menagerie Prods. v. CitySearch*, No. cv 08-4263, 2009 WL 3770668 (C.D. Cal Nov. 2009) ........ 10

*Meyer v. Sprint Spectrum, L.P.*, 45 Cal. 4th 634 (2009) ........ 14

*Peterson v. CELLCO Partnership*, 164 Cal. App. 4th 1583 (2008) ........ 19

*Rosenbluth Int'l, Inc. v. Super. Ct.*, 101 Cal. App. 4th 1073 (2002) ........ 22

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

iii.

DEFENDANTS' JOINT OPP TO MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-03967-MHP

# TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*South Bay Chevrolet v. General Motors Acceptance Corp.*,
72 Cal. App. 4th 861 (1999) .......... 9, 10

*Stickrath v Globalstar*,
527 F. Supp. 2d 992 (N.D. Cal. 2007) .......... 9

*Szabo v. Bridgeport Machs., Inc.*,
249 F.3d 672 (7th Cir. 2001) .......... 9

*Windham v. Am. Brands, Inc.*,
565 F.2d 59 (4th Cir. 1977) .......... 14, 18

*Zamani v. Carnes*,
491 F.3d 990 (9th Cir. 2007) .......... 18

*Zinser v. Accufix Research Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001), *as amended*, 273 F.3d 1266 (9th Cir. 2001) .......... 9

**STATUTES**

Business & Professions Code section 17203 .......... 9, 11, 19

Business & Professions Code section 17535 .......... 9, 11, 19

Federal Rule of Civil Procedure 23 .......... passim

Rule 23(a) .......... 9

Rule 23(b)(2) .......... 2, 9, 24, 25

Rule 23(b)(3) .......... 2, 9, 14, 24

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page6 of 31

## I. INTRODUCTION

Under the applicable standards for class certification, Plaintiff must convince this Court, following a rigorous analysis, that he has a viable method for litigating the claims of the putative class without resorting to individualized inquiries. Plaintiff's motion falls far short of meeting this fundamental requirement for certification. Most notably, Plaintiff fails to explain in even cursory terms how he proposes to litigate the necessary elements of his claims on a class-wide basis. Contrary to the assurances that pervade Plaintiff's motion, there are a host of individual issues that would make class-wide litigation completely unworkable.

First, Plaintiff's claims would require a separate inquiry for each class member to determine if they listed items on eBay knowing that their listings may not always appear immediately in eBay search results (what Plaintiff has referred to as so-called "search delays"). As Plaintiff acknowledged in his deposition, class members have no viable claim under any theory if they voluntarily sold on eBay knowing the potential for search delays. Plaintiff fails to explain how he can conceivably litigate this requisite issue of knowledge on a class-wide basis. To the contrary, it would be impossible to do so given the millions of putative class members and the myriad ways that any particular individual could have learned that listings may not appear immediately in search results. The potential sources of knowledge would include (among other things) the disclosures that eBay e-mailed directly to sellers, online disclosures on at least five different eBay web pages, and each seller's own experiences on eBay over time. To determine knowledge in this context, the Court would have to consider the particular circumstances and individual testimony of each class member. There is no feasible way to conduct this fact-intensive inquiry on a class-wide basis.

Second, Plaintiff fails to present even the most basic outline of a model to show if class members were damaged at all. Instead, Plaintiff asks the Court simply to assume that he can come up with a model in the future. This glaring omission leaves the Court to guess at how Plaintiff could ever determine if class members are entitled to any damages or restitution in this case. As explained in the Expert Report of Dr. Stephen Prowse (filed herewith), there is no

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

1.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page7 of 31

workable method to resolve these issues on a class-wide basis. Among other insurmountable obstacles, much of the data needed to determine if class members were potentially harmed does not exist. Moreover, the randomly-selected data sample provided to Plaintiff actually shows there is *no difference* in the outcome of listings that experienced search delays as compared to those that did not. It is telling that Plaintiff made no effort to use the available data in his motion, choosing instead to make vague references about how he might use other unspecified data to show that class members were harmed. This failure of proof goes to a prima facie element of Plaintiff's claims (not simply the individual amount of damages) and mandates denial of Plaintiff's motion.

Plaintiff's failure to present any model is particularly problematic given his counterintuitive theories of purported harm. Among other things, Plaintiff is seeking recovery for (i) listings that were only "delayed" for the few minutes or seconds needed to complete the technical process for making listings searchable on eBay, (ii) listings with a designated "Buy It Now" price where the items were successfully sold at the designated price and could not have been sold for any higher amount, and (iii) other auction-style listings where items were successfully sold for a profit. Plaintiff cannot set forth a coherent theory for how class members could have been harmed in these circumstances.

Recognizing he cannot satisfy Rule 23(b)(3), Plaintiff tries to invoke the comparatively relaxed standards for certifying injunctive relief classes under Rule 23(b)(2). But Plaintiff cannot rely on Rule 23(b)(2) because his claims have focused predominantly on monetary relief from the outset of this case. Plaintiff's eleventh-hour effort to recast his claims as seeking injunctive relief is an obvious attempt to avoid his burden of proof on certification. For these reasons, eBay respectfully requests that Plaintiff's motion for class certification be denied in its entirety.

## II. BACKGROUND

eBay is the world's largest online marketplace, with more than 88 million users who use eBay to buy and sell various items online.[1] eBay's diverse community of users encompasses

[1] *See* Boot Decl., ¶ 2, Ex. A, eBay website generally describing eBay.

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

2.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page8 of 31

everyone from casual users to large businesses that sell on eBay as their core business. To sell an item on eBay, a seller must first become an eBay member by agreeing to eBay's User Agreement.[2] Sellers can then fill out an online form, commonly referred to as the "Sell Your Item" form (hereafter "SYI").[3] The SYI form allows the seller to provide a description and photo of the item and to select various options for the listing. (Quan Decl., ¶ 2.) These options include selecting the selling format and the listing duration.[4] (*See* Declaration of Liz Hartrich, ¶ 4.)

**Auction-Style Format**: Plaintiff's claims involve auction-style listings. In standard auction-style listings, the seller selects a starting price for bidding and may also select a reserve price (a minimum bid amount that is hidden from bidders). The outcome of an auction-style listing is determined by the bids received, with the item being sold to the highest bidder (subject to the reserve amount, if any). (*Id.*) In addition, sellers can also opt to have a "Buy It Now" price for an auction-style listing, which gives buyers the option to purchase the item immediately at the "Buy It Now" price rather than bidding. (Hartrich Decl., ¶ 4.) If an item does not sell, eBay has a relisting policy that allows sellers to relist the item a second time within 90 days. If the second listing is successful, eBay refunds the seller's original "insertion fee" (discussed further below) so that the seller pays only one insertion fee for the item even though it was listed twice.[5]

**Listing Durations**: Sellers also select the duration of the listing. eBay offers listing durations of 1, 3, 5, 7, or 10 days for auction-style listings.[6] By selecting a particular duration, sellers set a pre-determined day and time when the auction will end.[7] As explained further below, sellers often choose the listing duration based on the corresponding ending date/time because the great majority of bids on eBay are received near the end of a listing (for example, a listing duration that ends in the middle of the night may be less preferable than one that ends when there

---

[2] The User Agreement spells out the relationship between eBay and its users and incorporates various eBay policies. *See* Boot Decl., ¶ 3, Ex. B, eBay's User Agreement. The User Agreement incorporates eBay's Help Pages by reference. *See id.*

[3] There are other listing methods on eBay but Plaintiff's proposed class definition is limited to SYI.

[4] *See* Boot Decl., ¶ 4, Ex. C, eBay's "Creating a Listing" help page; *see also* Quan Decl., ¶ 2.

[5] The listing must meet certain requirements. Boot Decl. ¶ 5, Ex. D, eBay's "Relisting Your Item" help page; *see also* Hartrich Decl., ¶ 11.

[6] Boot Decl., ¶ 6, Ex. E, eBay's "Selecting a Listing Duration" help page; *see also* Hartrich Decl., ¶ 5.

[7] *Id.* at ¶ 7, Ex. F, Deposition Transcript of eBay's 30(b)(6) Deponent, Nate Etter, 25:9-16.

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

3.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page9 of 31

are likely to be more active users on eBay). (Hartrich Decl., ¶ 6.)[8]

**eBay's Fees**. eBay's fees include an insertion fee, a final value fee, and various upgrade fees. The insertion fee is the amount eBay charges to list an item for sale, regardless of the outcome of the listing.[9] Significantly, eBay charges *the same insertion fee for auction-price listings regardless of the duration selected*, meaning the value of a listing on eBay is not driven by its length (there is only a $0.40 upgrade fee for a 10-day auction-style listing).[10] Final value fees are charged only if an item successfully sells and are calculated as a percentage of the item's final selling price.[11] The various upgrades (such as subtitles, extra pictures, or highlights) can be selected to help market a seller's items, but sellers do not have to utilize any upgrade to list an item on eBay. (Ex. K; Hartrich Decl., ¶ 10.)

**Listing Availability.** After a seller completes the listing process and the listing has been accepted by eBay's computer systems, the listing duration begins.[12] Plaintiff admits the listing is viewable on eBay.com and able to accept bids from potential buyers starting at this time. (Ex. I, 78:10-13.)

---

[8] *See also* Boot Decl., ¶ 10, Ex. I, Deposition Transcript of Michael Ewert, 18:1-16; *and* Ex. F, 25:9-19;
[9] *Id*. at ¶ 11, Ex. J, eBay's "Insertion Fees" help page.
[10] *Id.* at ¶ 12, Ex. K, eBay's "Fees for Selling on eBay" help page. The $0.40 upgrade fee for a 10-day "auction-style" listing is due to the fact that "auction-style" listings posted for longer durations utilize more of eBay's resources. (*See* Hartrich Decl., ¶¶ 7-9.)
[11] Boot Decl. ¶ 13, Ex. L, eBay's "Final Value Fees" help page.
[12] *Id*. at ¶ 14, Ex. M, eBay's Supplemental Interrogatory Responses to Missing Link, 5:23-27.

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

4.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

1 ██████████████████████

2       **eBay's Trust and Safety Review Process**.  eBay has a separate process to screen certain

3 items for potential fraud and other abuses before allowing them to appear in search results.  (Ex.

4 M, 6:12-7:10.)  Plaintiff does not dispute that this review process benefits the eBay community at

5 large by detecting and preventing fraud and abuse.   In fact, he explicitly acknowledged in

6 deposition that fraud detection and prevention is a necessary and desirable process.  (Ex. I,

7 117:14-119:2.)

8 ████████████████████████████████████████████████

9 ████████████████████████████████████████████████

10 ████████████████████████████████████████████████

11 ████████████████████████████████████████████████

12 ████████████████████████████████████████████████

13 ████████████████████████████████████████████████

14 ████████████████████████████████████████████████

15 ████████████████████████████████████████████████

16 ████████████████████████████████████████████████

17 ████

18 ████████████████████████████████████████████████

19 ████████████████████████████████████████████████

20 ████████████████████████████████████████████████

21 ████████████████████████████████████████████████

22 ████████████████████████████████████████████████

23 ████████████████████████████████████████████████

24 ████████████████████████████████████████████████

25 ████████████████████████████████████████████████

26 ─────────────────────

[13] Declaration of Jonathan Watkins, ¶ 2; *see also* Ex. M, 6:12-7:10.

27 [14]

28 ████████████████████████████████████████████████

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

5.

DEFENDANT EBAY'S OPP TO PLAINTIFF
EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

(

**eBay's Disclosures Regarding the Potential for Search Delays**. Throughout the class period, eBay has consistently disclosed that exact listing durations are not guaranteed and that listings may not appear immediately in search results. First, eBay sends an email *directly* to *all sellers* to confirm the terms of their listings. Throughout the alleged class periods, these listing confirmation emails contained disclosures stating that: "*Your item has been successfully listed on eBay. It may take up to several hours for your listing to appear in eBay search results.*"[15] Second, eBay has made additional similar disclosures on at least five different "help" pages on the eBay website.[16] These disclosures include the following

- "**Note**: We can't guarantee exact listing durations because there are times when your listing may not immediately be searchable when using a keyword or category search, until several hours after you created it. You can always find your listing by item number or through My eBay." (Ex. E.)
- "If you recently listed an item or revised a listing, it might not appear immediately when you search or browse. Although listings are generally searchable within 24 hours, to help make eBay a safe place to buy and sell, there are times when this might take longer."[17]

All of these disclosures are incorporated by reference to eBay's User Agreement.[18] As part of the eBay.com website that is one of the most highly trafficked web sites in the world, it is clear that these help page disclosures have been accessed and read by significant numbers of potential class members over the class period. There is no way, however, to track whether any individual seller

---

[15] Boot Decl., ¶ 15, Ex. N, EBAY-ML006803-14 (emphasis added). This disclosure was changed slightly in 2006 and currently states: "Your item has been successfully listed on eBay. It may take some time for the item to appear on eBay search results." *Id.*, ¶ 16, Ex. O, EBAY-ML006788-90; *and* Ex. M, 18:2-20.

[16] Boot Decl., ¶ 17 Ex. P, Disclosure Chart, Marked as Exhibit 9 during Deposition of Nathan Etter; *see also* Quan Decl., ¶¶ 4-6.

[17] *Id.*, ¶ 18, Ex. Q, eBay's "Where's My Item" help page.

[18] *See* n.2, *supra*.

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page12 of 31

has viewed a particular help page given the limitations of eBay's internal data.[19]

In addition, starting in March 2007 eBay included a disclosure as part of the SYI process such that users were required to click through the web page with the disclosure before completing a listing. (Quan Decl., ¶ 3.) This disclosure states: "Your listing will be posted on the eBay site and can be viewed in My eBay. *Your listing may not be immediately searchable by keyword or category for several hours, so eBay cannot guarantee exact listing durations in search results*."[20]

**A. The Named Plaintiff**

Michael Ewert sold a small handful of items eBay for personal purposes. (Ex. I, 9:4-10:6.) Ewert listed his first item on eBay on January 6, 2007 and testifies he recalls it did not appear in search results for some number of hours. Mr. Ewert then listed another item on January 14, 2007, which he alleges experienced a search delay as well. Both of these listings resulted in successful sales for a profit, although Mr. Ewert cannot determine the amount of the profit because he has no record of his initial purchase price for the items sold. (*Id*. at 31:16-24.) Based on these experiences, Mr. Ewert was well aware that listings may not immediately appear in search results and admitted as much. (*Id*. at 10:7-18, 29:1-14, 38:6-23, 41:10-19, 43:25-44:9.) Still, Mr. Ewert continued to sell items on eBay after these experiences. (*Id*. at 39:2-7.) He explained that he did so because the items were not important to him and he is not seeking compensation for any delays associated with these latter items. (*Id*. at 41:12-19.) Mr. Ewert acknowledged that if somebody lists an item with full knowledge that their item may not immediately appear in search results, that seller is not entitled to a refund of fees. (*Id*. at 85:11-25.) This candid admission raises a strong defense to Mr. Ewert's individual claims and makes him a particularly inadequate class representative.

**B. The Claims and Proposed Class at Issue**

The gravamen of Plaintiff's claims is that putative class members are entitled to monetary compensation for *all* listings for which there was *any* delay between the moment a seller clicked

[19] *See* Declaration of Shwetha Radhakrishnan, ¶ 2.

[20] Ex. M, 16:15-18:1; Quan Decl., ¶ 3 (emphasis added) As of May 2008 the text of this disclosure was revised slightly. *Id.*

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

7.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page13 of 31

his or her mouse to submit the listing and the time the item became searchable by potential buyers – without any regard for the length of the delay, the reason for the delay, or the outcome of the listing. The breadth of the proposed class is staggering. First, as discussed above, *every* listing on eBay goes through the search indexing process. Thus, the proposed class would encompass *every single item* that was listed on eBay during the class period using the SYI form, even those that were "delayed" just minutes or even seconds due to the search indexing process. Second, Plaintiff's claims would include all listings without regard to the outcome of the listing, including listings that led to successful sales for a profit. (Ex. I, 49:4-51:5.) Third, the proposed class would include *all sellers*, including large and sophisticated business entities that sold on eBay for business purposes and have sufficient resources to pursue independent claims. (*Id*. at 74:5-8, 97:8-99:7; Hartrich Decl, ¶ 2.) Last, Plaintiff is seeking to recover *all* fees paid, including the Final Value Fees that are charged only upon a successful sale. Notably, fellow class members The Missing Link, Inc. and Jeffrey Marks have disclaimed any effort to recover final value fees, implicitly recognizing that such a claim is untenable.

## III. ARGUMENT

### A. Legal Standards

As the party seeking certification, Plaintiff must demonstrate that this case satisfies the requirements of Federal Rule of Civil Procedure 23. *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007). In making this determination, the Court should apply a "rigorous analysis" to ensure that all applicable Rule 23 requirements are met, *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005) (quotation omitted). This rigorous analysis requires an evaluation of all issues relevant to class certification, even if those issues overlap with the merits of the substantive claims. Indeed, "courts are not only at liberty to but *must* consider evidence which goes to the requirements of Rule 23 even [if] the evidence may also relate to the underlying merits of the case." *Dukes*, 509 F.3d at 1177, n.2 (quotations omitted). *See also In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 317 (3d Cir. 2009) ("Because the decision whether to certify a class requires a thorough examination of the factual and legal allegations, the court's rigorous analysis may include a preliminary inquiry into the merits") (internal citations omitted);

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

8.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page14 of 31

*Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) ("[t]he proposition that a district judge must accept all of the complaint's allegations when deciding whether to certify a class cannot be found in Rule 23 and has nothing to recommend it").

Here, Plaintiff must meet the specific requirements of Rule 23(b)(3)[21] which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance "test is 'far more demanding' than the Rule 23(a) commonality analysis" and requires the Court to "identify the substantive issues raised by the cause of action and then inquire into the proof relevant to each issue." *Deitz v. Comcast Corp.*, No. C06-06352 WHA, 2007 WL 2015440 at *6 (N.D. Cal. July 11, 2007) (internal quotations omitted). "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001), *as amended*, 273 F.3d 1266 (9th Cir. 2001) (internal quotations omitted).

### B. Plaintiff's Claims Require Individualized Evidence of Whether Each Seller Knew and Accepted the Potential for Search Delays

#### 1. Sellers Who Voluntarily Listed Items Knowing the Potential for Search Delays Have No Viable Claim.

**Unfair Competition Law and False Advertising Law Claims**: Plaintiffs seeking restitution under the UCL and the FAL must demonstrate a causal link showing that the amounts they seek to recover were obtained "by means of" the alleged fraudulent conduct[22] Where consumers enter into a transaction with a defendant *knowing* of the business practices in dispute, they cannot meet this standard and cannot seek restitution of amounts voluntarily paid to the

---

[21] As mentioned, Plaintiff also seeks certification under Rule 23(b)(2) but cannot do so as a matter of law because his claims are focused on seeking monetary relief, as further discussed below in Section III.G.

[22] Bus. & Prof. Code section 17203 provides: "The court may make such orders or judgments … as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired *by means of* such unfair conduct." (emphasis added.) Bus. & Prof. Code section 17535 similarly provides that orders of restitution must be limited to amounts "which may have been acquired by means of any practice in this chapter declared to be unlawful." *See also Stickrath v Globalstar*, 527 F. Supp. 2d 992, 996 (N.D. Cal. 2007) ("both the UCL and CLRA protect only plaintiffs who have suffered harm '*as a result of*' defendants' unlawful or unfair practices.") (emphasis added.)

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

9.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page15 of 31

defendant. For example, in *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 888-89 (1999), the court rejected UCL and FAL claims because the evidence showed that the plaintiff "entered into the disputed loan agreements knowing, understanding, agreeing, and expecting" the defendant's challenged practices.[23] *See also Lozano v. AT&T Wireless Servs., Inc.*¸ 504 F.3d 718, 736 (9th Cir. 2007) ("[w]e agree that evidence about individual knowledge and expectations may help the court determine the extent of the harm for the purposes of the UCL's balancing test.").[24]

Given this required element of proof, certification of a UCL claim is inappropriate where individualized evidence would be needed to evaluate the putative class members' expectations and knowledge of the practices in dispute. *See Menagerie Prods. v. CitySearch*, No. cv 08-4263, 2009 WL 3770668, at *13 (C.D. Cal Nov. 2009) (denying certification of UCL "unfair" conduct claim because "a plaintiff's individual expectations about the business practice are relevant to determining the extent of its harm"); *Caro v Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668-69 (1993) (affirming denial of certification of UCL claim where claims would involve consumers' "personal assumptions about the nature of the products they wanted to buy").

The California Supreme Court's decision in *In re Tobacco II* does not change this result. 46 Cal. 4th 298 (2009). The California Supreme Court's holding does not purport to address Rule 23 requirements under federal law. Nor does it ease Plaintiff's burden to demonstrate that he can prove on a class-wide basis that class members were exposed to and affected by the alleged misrepresentations at issue. The recent California Court of Appeal decision in *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966 (2009) makes this clear.

In *Cohen*, the trial court denied certification of a UCL claim involving allegations that DirecTV had misled subscribers of a certain DirecTV programming option. The trial court found

---

[23] Notably, the court noted that, as here, the "evidence indicated that by various means of disclosure [defendant] informed [plaintiffs]" of defendant's practices, and named plaintiff certainly "understood accordingly." *Id*. at 888-90.

[24] While the court in *Lozano* ultimately affirmed certification of the UCL claim under the particular facts of the case (which are inapplicable here and involved uniform statements made to all class members) the Court went out of its way to state that "we might have decided the issue differently," suggesting the court did not believe the case warranted certification. *Lozano*¸ 504 F.3d at 737.

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

10.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page16 of 31

that commonality was lacking because the proposed class encompassed consumers who were never exposed to any misrepresentations and those who made consumer decisions based on other factors, including:

> Subscribers who never saw DIRECTV advertisements or representations of any kind …. Subscribers who only saw and/or relied upon advertisements that contained no mention of [the allegedly misleading statements] … [and] Subscribers who purchased DIRECTV HD primarily based on word of mouth or because they saw DIRECTV's HD in a store or at a friend's home.

*Id*. at 971-72. The Court of Appeal affirmed denial of certification, noting that:

> common issues of fact do not predominate over [plaintiff's] proposed class because the *members of the class stand in a myriad of different positions insofar as the essential allegation in the complaint is concerned*, namely that DIRECTV violated the CLRA and the UCL by inducing subscribers to purchase HD services with false advertising.

*Id*. at 979 (emphasis added). The court explained that the *In re Tobacco II* holding on *standing* issues does not preclude a court resolving a motion for *class certification* from considering individual differences in whether and how putative class members were affected by the defendant's alleged improper conduct. *Id*. at 981. The Court summarized its holding as follows:

> [T]he trial court's concerns that the UCL and the CLRA claims alleged by Cohen and the other class members would involve factual questions associated with their reliance on DIRECTV's alleged false representations was a proper criterion for the court's consideration when examining 'commonality' in the context of the subscribers' motion for class certification, even after *Tobacco II*.

*Id*. Similarly here, in determining if common issues predominate, the Court can and should consider the individual differences among putative class members in terms of their exposure to the alleged misrepresentations and their awareness of the potential for search delays. Nothing about *In re Tobacco II* obviates the need for that analysis.[25]

**Consumer Legal Remedies Act Claim**: These same considerations apply with even more force to Plaintiff's CLRA claim. Under the CLRA, Plaintiff must prove "actual reliance" to

[25] These same principles apply equally to Plaintiff's FAL claim. "The restitutionary remedies of sections 17203 and 17535. . .are identical and are construed in the same manner." *Cortez v. Purolator Air Filtration Prods.*, 23 Cal. 4th 163, 177 (2000).

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

11.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page17 of 31

establish liability. *See Buckland v. Threshold Enters., LTD.,* 155 Cal. App. 4th 798, 810 (2007) ("plaintiffs asserting CLRA claims sounding in fraud must establish that they actually relied on the relevant representations or omissions."); *Cohen*, 178 Cal. App. 4th at 980 ("actual reliance must be established for an award of damages under the CLRA."). Accordingly, Plaintiff must demonstrate that all putative class members were exposed to *and* relied to their detriment on the aspects of the SYI form they claim are misleading. Any sellers who voluntarily sold on eBay knowing the potential for search delays would not be able to meet this "actual reliance" requirement as a matter of law.

The inherently individualized inquiry needed to determine reliance generally precludes certification of CLRA claims, as numerous courts have held. *See Lozano*, 504 F.3d at 735 (individual issues predominate because the court "would have to conduct an individualized review as to each class member's awareness and knowledge of [industry practices] and [defendant's] disclosures to determine whether its representations were material under the CLRA"); *Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 623-26 (S.D. Cal. 2007) ("significant individualized issues related to proof of reliance" precluded certification of CLRA claims where "a large portion of the proposed class may not have ever been exposed to or relied upon" the alleged misrepresentations).

### 2. There Is No Feasible Way To Litigate The Issues of Knowledge and Consent on a Class-Wide Basis

Litigating the required elements above would be impossible to do on a class-wide basis. First, the Court would need to make individual findings for each class member to determine:

- if they reviewed the aspects of the SYI form that Plaintiff claims are misleading;
- if they believed, based on that review, that listings would be immediately searchable in all cases; and
- for those who believed that listings would be immediately searchable, whether that belief was a material factor in their decision to list items on eBay.[26]

[26] For example, Plaintiff testified he listed items even after he learned about the potential for search delays because the items he listed were not important to him, clearly showing that the extent of searchability did not matter to him for those listings. (Ex. I at 41:12-19.)

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

12.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page18 of 31

Unless these questions are answered in the affirmative, class members would have no viable claim under the UCL or FAL (which require exposure to the alleged misleading statements) or the CLRA (which requires both exposure and actual reliance). These questions cannot be answered without individual testimony from each class member since there is no other way to know what aspects of the SYI form a class member may have reviewed and what they subjectively believed as a result of their review.

In addition, for any class members who may have initially believed that all listings are immediately searchable, the Court would need to determine if they nonetheless became aware of the potential for search delays from other sources. Accordingly, the Court would need to determine for each class member:

- whether they reviewed the listing confirmation emails sent directly to sellers, disclosing that "it may take up to several hours for your listing to appear in eBay search results";
- whether they reviewed any of the eBay help pages with similar disclosures;
- whether they sold items after March 2007, when a disclosure was built into the SYI listing process;
- whether they learned from their actual selling experiences on eBay that listings may not always appear immediately in search results; and
- whether they learned about the potential for search delays from other sources like bulletin board postings and other sources of seller comments.[27]

Again, these questions cannot be resolved without individual testimony. With regard to eBay's online disclosures, there is no data that tracks which individual sellers have viewed particular help pages. (Radhakrishnan, Decl., ¶ 2.) And even if there were some class-wide method to identify the class members who saw particular disclosures, the Court would still need to determine what each class member subjectively understood the disclosures to mean. While eBay contends that its disclosures are sufficient under any objective standard, Plaintiff claims they are ambiguous. (Ex. I, 79:25-81:17, 83:19-84:4.) It would therefore be necessary to determine each class member's subjective understanding under Plaintiff's theory of the case.

[27] For example, the *Ewert* Complaint lists several postings on online bulletin boards complaining about search delays. *See Ewert* Third Amended Cmplt. at ¶ 12.

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

13.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

The obstacles that the Court would face in litigating issues of knowledge and consent are well illustrated by the named Plaintiff's own claims. Plaintiff testified that he continued to list items for sale on eBay after experiencing search delays on eBay. (Ex. I at 10:7-18, 29:1-14, 38:6-23, 41:10-19, 43:25-44:9.) Plaintiff further testified that he is *not* seeking recovery for any search delays on these subsequent listings, explaining that the items he sold were not important to him. (*Id*. at 41:12-19.) A fact-finder would need to determine for each class member whether there are similar items that were voluntarily listed knowing of the potential for search delays and for which they are not seeking compensation. Plaintiff has proposed no method whatsoever as to how he could litigate these sorts of fact-intensive and inherently individualized issues on a class-wide basis. To the contrary, the core issues of knowledge and consent could only be resolved through separate trials that make certification entirely unworkable.

### C. Individualized Issues Will Also Predominate In Proving Whether Plaintiff Is Entitled To Recover Any Damages Or Restitution

#### 1. Plaintiff Has No Class-Wide Method To Prove Damages.

Plaintiff must also prove that search delays caused damages in order to establish liability on the CLRA claim. *See, e.g.*, *Meyer v. Sprint Spectrum, L.P.*, 45 Cal. 4th 634, 641 (2009) ("in order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result."). Plaintiff must therefore convince the Court he has a viable class-wide method to show that each class member any damage from the alleged search delays. Unless Plaintiff can establish damages using common proof and without resort to individualized evidence, class certification should be denied. "'[W]here fact of damage cannot be established for every class member through proof common to the class, the need to establish … liability for individual class members defeats Rule 23(b)(3) predominance.'" *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 135 (C.D. Cal. 2007) (quotation omitted); *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 68-69 (4th Cir. 1977) (where proof of injury "does not lend itself to … a mechanical calculation" courts generally found the matter to be "unmanageable as a class action")

Here, there is no conceivable way to prove on a class-wide basis that all class members were harmed by search delays. Given the issues raised by Plaintiff's claims, he would need to

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page20 of 31

show (i) that class members were somehow damaged by the brief timing of the search indexing process, (ii) that class members who used auction-style listings with a Buy-It-Now price and successfully sold their items at the designated price still suffered some form of harm from search delays, and (iii) that class members using standard auction-style listings (without a Buy-It-Now price) would have sold their items for more if their items had appeared immediately in search results, thus suffering damages. Plaintiff's complete failure to explain how he intends to address any of these issues speaks for itself: he proposes no method of proof because none is possible.

As an initial matter, the notion that any eBay user suffered damages from the search indexing process should be rejected as absurd on its face. The brief timing needed to complete the search indexing process is an unavoidable by-product of processing and transmitting data over the Internet – no different than the timing associated with sending email or downloading media. Allowing recovery of damages under Plaintiff's theory could thus open the floodgates for litigation over the most routine aspects of communicating or transacting business over the Internet. Plaintiff has not articulated any rational theory why they should be allowed to recover damages for the unavoidable timing issues associated with the search indexing process. Nor have they proposed any method to prove that any purported damages resulted from the minutes or seconds needed to complete the search indexing process, mandating denial of certification for this aspect of Plaintiff's claims.

Plaintiff's claim related to auction-style listings sold at Buy-It-Now prices is equally flawed. Plaintiff does not even try to explain how there could be damages where a seller sets a Buy-It-Now price and then successfully sells it at that designated price. In these circumstances, there is no possibility of damages because the seller could not have gotten a more favorable result from the transaction, whether the listing had appeared immediately in search results or not. Certification of any damages claims for auction-style listings of items purchased at a Buy-It-Now price should be denied given Plaintiff's complete failure to present any method to determine the fact or amount of damages on these types of listings.

Plaintiff's claims for damages related to standard auction-style listings (those without a Buy-It-Now price) fare no better. Plaintiff simply asks the Court to assume that search delays

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

15.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page21 of 31

will affect the outcome of all auction-style listings, without proposing any method of proof or providing any supporting evidence. *See* Ewert Motion at 3:21-4:5

These findings are consistent with the academic literature showing that the vast majority of winning bids on eBay are made in the last few hours or minutes shortly before the *end* of a listing. (*Id.* at ¶¶ 18-21.) This phenomenon means that the search delays at issue here – all occurring at the *beginning* of a listing – will generally not impact the outcome of listings. *Id.* In combination, the data in this case and the academic literature both show that Plaintiff's assumptions of harm are entirely unfounded and his claims that terrible injustice would result from the denial of certification are dramatically overblown. To the contrary, there is no evidence to show that putative class members have been harmed at all.

More importantly for class certification purposes, even if there are some individuals who were damaged because their items could have sold for more without a search delay, the fundamental problem remains that there is no way to determine which class members might have such a claim for damages. As Dr. Prowse explains, there is no feasible way to determine if an auction-style listing would have had a different (better) outcome absent a search delay, given all of the other variables that can impact the ultimate outcome. ( *Id.* at ¶¶ 25-48.) To even attempt to evaluate the potential impact that a search delay might have had on a particular listing, an econometrician would need to (i) determine all of the variables that could have impacted the outcome of the listing other than the search delay, (ii) identify a set of similar listings that did not have a search delay, and (iii) assuming there are a sufficient number of listings for comparison, develop a regression model to isolate the impact of the search delay from all other variables that might have affected the outcome. ( *Id.* at ¶¶ 26-27.) This is not possible.

To illustrate this unmanageable process, assume a hypothetical listing that had a reserve

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

16.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page22 of 31

price of $50, a poor item description that did not disclose the condition of the product, and no offer of free shipping. Assume that eBay held the item out of search results for two hours for Trust and Safety review and that the item eventually sold for $50 (the reserve price). To analyze if there are potential damages associated with this listing, an expert would first need to determine if there are a sufficient number of similar listings to perform a statistically valid analysis. For many, if not all, items, this initial hurdle will be insurmountable. This would be particularly true for one-of-a-kind or collectible items, of which millions are sold on eBay each year. (Hartrich Decl., ¶ 3.) Assuming there are a sufficient number of comparable listings and further assuming that the "delayed" listing sold for *less* than the others similar items, the expert would then need to try to develop a statistical regression model to determine whether the lower price on the "delayed" listing was caused by the search delay or by some combination of other factors.

In comparison to the hypothetical "delayed" listing in this example, the other listings may have sold for more because they had a lower reserve amount, a better item description, or more favorable terms like free shipping – all factors that could have generated more bids and a higher sale price. It would be impossible to know if the search delay itself caused the lower price without untangling the potential impact of the delay from these and all other factors that may have impacted the outcome. And even if that immensely complex analysis could be done for this one hypothetical listing, the same process would then need to be repeated for *each of the millions of items at issue in the case*. As Dr. Prowse explains, a host of unsolvable problems prevent this theoretical exercise from ever being applied in reality. Most importantly, many of the relevant factors that would need to be analyzed are not recorded in any data source, making it impossible to conduct any statistical analysis whatsoever. ( *Id*. at ¶¶ 28-45.)

Plaintiff makes no effort to explain how he intends to address these obstacles. Instead, he asks the Court simply to assume that he will be able to develop a method of proof in the future. *See* Ewert Motion, 4:1-5. The Court should not accept these unsupported assurances, particularly given the magnitude of the proposed class and the extreme complexity of the damages issues raised by Plaintiff's claims. *See, e.g., In re Med. Waste Servs. Antitrust Litig.*, No. 2:30MD1546, 2006 WL 538927, *8 (D. Utah Mar. 3, 2006) ("It is simply not enough that Plaintiffs merely

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

17.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page23 of 31

promise to develop in the future some unspecified workable damage formula. A concrete, workable formula must be described before certification is granted."); *Windham*, 565 F.2d at 70 (courts "should not certify the class merely on the assurance…that some solution will be found" to damages issues). Plaintiff's failure to present a viable model is particularly egregious given that Plaintiff has had ample opportunity to conduct discovery, as this case has been pending since 2007. *See In re GPU Antitrust Litig.*, 253 F.R.D. 478, 506 (N.D. Cal 2008) (denying certification where plaintiffs had "eight months of discovery" and "should be able to provide more than promises at this late stage of the litigation"). Given Plaintiff's failure to present any proposed method for proving damages[28] and the unrebutted expert report of Dr. Prowse showing no method is possible, certification should be denied as to all claims that require a showing of harm.

**2. Plaintiff Has No Class-Wide Method To Prove That Class Members Are Entitled To Restitution**

The issues raised by Plaintiff's UCL and FAL claims for restitution are equally complex. Under basic principles of restitution, plaintiffs can not recover amounts paid to a defendant if the value of the goods or services they received in return is equal to the amount they paid. For instance, in *Day v. AT&T Corp.*, 63 Cal. App. 4th 325 (1998), the Court of Appeals addressed UCL and FAL claims involving consumers who had purchased prepaid phone cards. Plaintiffs alleged they did not get the full value they expected because portions of minutes were rounded up when calculating the remaining time on the cards (i.e., a call of one and a half minutes counted as a call of two minutes). The Court held that plaintiffs could not recover the amounts they paid because they had "obtain[ed] the full value of what was paid for and therefore ha[d] given up nothing, regardless of whether he or she was improperly induced to purchase the card in the first place." *Id*. at 340. The Court emphasized that § 17203[29] of the UCL "operates only to return to a

---

[28] Any belated effort by Plaintiff to submit a rebuttal expert report or to propose a new damages methodology in their reply brief would be improper. *See Linder v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 638 (D. Hawai'i 2008) (striking expert's rebuttal report where report was based on a trenching exploration that the expert could have done "prior to his original expert [report] disclosure deadline"); *see also Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("district court need not consider arguments raised for the first time in a reply brief.")

[29] The same principles apply to Plaintiff's FAL claim. *See Cortez*, 23 Cal. 4th at 177 ("[t]he restitutionary remedies of sections 17203 and 17535. . .are identical and are construed in the same manner.").

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

18.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page24 of 31

person those *measurable amounts* which are *wrongfully taken* by means of an unfair business practice." *Id*. at 339 (emphasis in original). *See also Peterson v. CELLCO Partnership*, 164 Cal. App. 4th 1583, 1593 (2008) ("There is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected.").

In the context of a class action seeking restitution, plaintiffs must show they can prove that the value of the products or services they received from the defendant is less than the amounts they paid. The inherent difficulty of this valuation exercise is demonstrated in *Colgan v. Leatherman Tool Group, Inc*., 135 Cal. App. 4th 663 (2006). *Colgan* involved consumers who had purchased hand tools with "Made in the U.S.A." labels that were actually manufactured in part overseas. As here, the class members retained the benefits of defendants' tools and could not seek restitution for their total purchase price.[30] The trial court awarded restitution of 25% of each purchaser's purchase price as an estimate of the difference in the value of the tools as represented and the tools actually received. *Id*. at 677. The Court of Appeal reversed.

Consistent with *Day*, the court in *Colgan* reiterated that restitution under the UCL "must be of a measurable amount to restore to the plaintiff what has been acquired by violations of the statutes." *Id*. at 698. Moreover, the court held that "[t]he amount of restitution awarded under the [FAL] and [UCL] and the CLRA must be supported by substantial evidence." *Id*. at 700 The Court of Appeal went on to reverse the restitution award because there was no substantial evidence of a measurable difference between the value of what the class members thought they paid for (tools made in the U.S.A.) and what they actually received (tools manufactured in part overseas). While there was expert testimony that a "Made in the USA" label has a positive impact on consumers, this was insufficient because the expert had not attempted "to quantify either the dollar value of the consumer impact or the advantage realized by [the defendant]." *Id*.

Plaintiff has a similar uphill battle here. He must prove, for each of the millions of listings involving an alleged search delay, that the value of the listing they received was less than the

---

[30] The Ninth Circuit has recognized that it is improper to award the total amount that plaintiffs have paid to a defendant where the plaintiffs have received services from the defendant and "there is no basis to conclude that every single dollar that flowed to [the defendant] was 'ill-gotten.'" *In re First Alliance Mortg. Co.*, 471 F.3d 977, 997 (9th Cir, 2006).

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

19.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page25 of 31

value of the listing they say they expected (one immediately available in search results). For example, if a three-day listing was initially held from search results for two hours for Trust and Safety review, plaintiffs would have to prove that the value of a listing searchable for 70 hours is less than the value of a listing searchable for 72 hours (three days). Plaintiff would then need to repeat this exercise for each of the different lengths of alleged search delays at issue, which span minutes and seconds (for the "delays" associated with the search indexing process) to several hours. (Prowse at ¶¶ 52.) In doing so, Plaintiff would also have to account for the fact that most listings with search delays still result in a successful sale, with many sold for a substantial profit. Again, named Plaintiff does not even attempt to explain how he proposes to make these necessary determinations for each of the millions of listings at issue in this case.

To the contrary, as explained in the Prowse report, none of the accepted methods of valuation can be applied under the circumstances here. First, the "market" approach of valuation is unworkable because there is no market that could be used to determine the prevailing price of listings that are affected by search delays of different lengths. (*Id.*) There is no market, for example, to show what consumers might pay for a listing that appears in search results for 70 hours as compared to one that appears for 72 hours.

The limited market information that is available, however, suggests that the value of a listing is *not* determined by its duration at all. Significantly, eBay charges *the same amount* of insertion fees regardless of the duration of the listing. (*See* Section II above; *see also* Hartrich Decl. ¶¶ 7-9.) These facts undermine any notion that a class member has been deprived of some expected value if, for example, a listing is searchable for 70 hours as opposed to 72 hours. (*Id.*)

Second, the alternative "income" approach for determining the value of a "delayed" listing is also impossible to apply on a class-wide basis. As Dr. Prowse explains, under standard economic principles, determining the value of a search delay for restitution purposes would require comparing the difference between the expected outcomes of the listing with and without the search delay. In other words, where the expected outcome of the listing with a search delay is the same as the expected outcome without a search delay, the value associated with the delay is zero and the plaintiff is not entitled to any restitution of fees. As explained above, there is no way

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

20.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page26 of 31

to determine what the expected outcome of a "delayed" listing might have been absent the search delay for a host of reasons. (*Id.* at ¶¶53-58.) These difficulties apply equally to determining restitution as they do in determining damages, and preclude certification for the same reasons.

Last, as a basic matter of equity, Plaintiff should not be allowed to recover restitution of fees without taking into account the monetary profits and other benefits that he received from his listings. (Ex. I, 32:4-12, 49:4-7.) *See Dunkin v. Boskey*, 82 Cal. App. 4th 171, 198 (2000) ("a party seeking restitution must generally return any benefit that it has received.") (quotations and citations omitted). There is no way, however, to determine the amount of profits on individual listings without individualized evidence from each class member to show the original purchase price of an item as compared to the sale price on eBay. Moreover, many sellers will have no record or recollection of the facts needed to determine the amount of profits they received from their listings. For example, Plaintiff Ewert testified that he has no way to determine the specific amount of the profits he made given a lack of sufficient records. (*Id.*)

**3. Plaintiff Cannot Demonstrate Which Listings Were "Delayed" Without Individualized Testimony**

In addition to the difficulties noted above, Plaintiff faces an even more fundamental obstacle that makes calculating class-wide damages or restitution impossible: he cannot even identify which listings were affected by search delays in the first place. [redacted] Given these gaps in the available data, there is no workable method for Plaintiff to determine which listings are even at issue in this case without resorting to individualized proof. *See In re Wal-Mart Stores, Inc., Wage and Hour Litig.*, No. C 06-2069 SBA, 2008 WL 413749, at *8 (N.D. Cal. 2008) (denying certification of subclass where information needed to ascertain class

---

[31] *See* discussion above at II.

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

21.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page27 of 31

members was "not contained in any of the electronic databases at issue, but can only be determined by an individual review of each potential class member's personnel file.")

Plaintiff's own claims demonstrate this fundamental difficulty. Mr. Ewert testified he listed a football jersey and then tried unsuccessfully to search for the item for some number of hours. (Ex. I, 29:1-14.) But eBay's data shows no Trust & Safety review of that listing that could have accounted for the alleged delay. (Watkins Decl., ¶ 9.) To resolve this conflict, a fact-finder would have to evaluate whether the perceived delay resulted from Mr. Ewert using a flawed search method, whether Mr. Ewert's recollection may be wrong, or whether there may have been some glitch in eBay's data for that particular listing (among other possibilities). This highly fact-intensive inquiry would need to be repeated for each of the millions of listings at issue just to determine the most basic element of Plaintiff's claims.

**D. Plaintiff's CLRA Claim Would Also Require Individual Findings On the Consumer Status Of Each Putative Class Members**

To establish liability under the CLRA and UCL, Plaintiff must prove that each class member is a consumer entitled to protection under these statutes. Under the CLRA, sellers who used eBay for business purposes would not be "consumers." *See* e.g. *Lazar v. Hertz Corp*., 143 Cal. App. 3d 128, 141-142 (1983) (holding that plaintiff used defendants' services for business purposes and could not maintain a CLRA claim). Similarly, corporations and other business entities generally cannot seek relief under the UCL, particularly where they have the independent resources to pursue direct claims against the defendant. *See, e.g., Linear Tech. Corp. v. Applied Materials*, 152 Cal. App. 4th 115, 135 (2007) (dismissing UCL claims of plaintiffs that were "neither competitors nor powerless, unwary consumers, but … corporate customers in Silicon Valley, each of which presumably has the resources to seek damages or other relief … should it choose to do so.") (quotations and citations omitted); *Rosenbluth Int'l, Inc. v. Super. Ct.*, 101 Cal. App. 4th 1073, 1078-79 (2002) (individual plaintiff could not pursue a UCL claim to represent corporations with independent resources to pursue direct claims).

There is no way for Plaintiff to show which putative class members might have a CLRA

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

22.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page28 of 31

or UCL claim under these standards without examining the individual circumstances of each seller. There is no data, for example, that could be used to identify which sellers sold for consumer as opposed to business purposes. Nor is there any way to determine whether a seller falls within the standards set forth in *Linear Tech. Corp*. without examining the particular resources and interests of each class member that is a business entity. Given the immense number and broad diversity of putative class members (from casual individual sellers to large corporations) there would be no way to resolve these necessary elements on a class-wide basis.

**E. The Named Plaintiff Is Not An Adequate Class Representative And Does Not Have Claims Typical Of Many of The Proposed Class Members**

The Plaintiff's claims here do not meet the typicality requirement of Rule 23 because his interests potentially conflict with those of many putative class members. *See, e.g., In re GPU*¸ 253 F.R.D. at 489-90 ("a district court must ensure that the named plaintiffs have incentives that align with those of absent class members"). In particular, Plaintiff is a poor candidate to represent the many sophisticated business entities that form a substantial part of the proposed classes. (*See* Hartrich Decl., ¶ 2.) These putative class members are likely to have dramatically different interests and motivations than Plaintiff, who is a casual individual seller who sold only a few items for personal purposes. These dramatic disparities between Plaintiff's interests and those of other putative class members undermine any finding of adequacy or typicality. *See In re GPU*, 253 F.R.D. at 489-90 (named plaintiffs not adequate class representatives where they were individuals with minor purchases seeking to represent large business entities with much larger purchases); *Deiter v Microsoft Corp*., 436 F.3d 461, 467-68 (4th Cir. 2006) (named plaintiffs, as individual purchasers, could not represent a class including large enterprise customers).

Moreover, Mr. Ewert's admission that he continued to list items on eBay knowing the potential for search delays raises a unique defense that further undermines his adequacy as a class representative. *See Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997) (plaintiff cannot serve as a class representative where there is a "danger that absent class members will suffer if their representative is preoccupied with defenses unique to" the named plaintiff) (internal quotations omitted).

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

23.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page29 of 31

### F. A Class Action Is Not Superior to Other Methods of Resolution

In addition to the requirement of predominance (which Plaintiff fails to meet), Rule 23(b)(3) requires that the proposed class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff cannot show that class action treatment would be superior here because the core issues noted above would still require individual adjudication even if certification were granted.

Plaintiff argues that the Court must grant certification because the proposed class would otherwise be deprived of an adequate remedy, due to the small amounts in dispute for most sellers. But the fact that many sellers may have small individual claims does not dictate the outcome of the Rule 23 analysis, as Plaintiff suggests. Accepting Plaintiff's argument would mean that certification is automatic in virtually all consumer class actions, violating the Ninth Circuit's admonition that courts apply a "rigorous analysis" of all Rule 23 requirements. Plaintiff cannot use the average size of each class member's claims as a crutch to excuse his failure to satisfy the predominance requirements of Rule 23(b)(3).

Moreover, Plaintiff's argument misstates the facts. Many eBay sellers are large businesses with very significant volumes of sales, each of whom would have both the interest and ability to pursue individual claims if they felt that search delays were an issue. (Hartrich Decl. ¶ 2.) The fact that no such sellers have pursued an independent claim is telling. Moreover, eBay gives all users the option to pursue disputes involving small amounts through a low-cost arbitration option that avoids the burdens and expenses of full litigation. This option gives all users a viable method for resolving their disputes with eBay and undermines Plaintiff's claim that denial of certification would deprive users of any means to address their claims. (*Id*. at ¶ 12.)

### G. Plaintiff Cannot Rely On Rule 23(b)(2) Because He Seeks Monetary Relief

Seeking to avoid the requirements of Rule 23(b)(3), Plaintiff asks the Court to apply the more relaxed standards for injunctive relief classes under Rule 23(b)(2). Certification under Rule 23(b)(2), however, "is appropriate only where the primary relief sought is declaratory or injunctive." *Dukes*, 509 F.3d at 1186 (citation and quotation omitted). Where an action seeks

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

24.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

Case5:07-cv-02198-RMW Document103 Filed01/28/10 Page30 of 31

both monetary and injunctive relief, the court must "examine the specific facts and circumstances of [the] case, focusing predominantly on the plaintiffs' intent in bringing the suit." *Id*.

Here, Plaintiff's intent is made unmistakably clear from his own words. Plaintiff's Motion repeatedly and consistently stating the intention to seek damages and restitution. (*See* Ewert Motion at 4:1-4, 12:14-16 [e.g. "[t]he claim against eBay in this action is statutory and the remedy of restitution is equitable and for restitution vis-à-vis damages."]; *see also* Ex. I, 46:18-21 ["I would like basically for them to refund the listing fees…"].)

While the complaint pays some lip service to seeking injunctive relief, these incidental references are insufficient to invoke Rule 23(b)(2). Numerous courts have rejected application of Rule 23(b)(2) in closely analogous circumstances. *See Lozano*, 504 F.3d at 729 (Rule 23(b)(2) certification inappropriate in class action seeking injunctive and monetary remedies under UCL, CLRA, and breach of contract claims); *Mahfood v. QVC, Inc.*, No. SACV 06-0659-AG, 2008 WL 5381088, at *4 (C.D. Cal 2008) (plaintiffs could not rely on Rule 23(b)(2) in a class action alleging UCL and CLRA claims because "[i]n cases similar to this one … courts have found requests for monetary relief to be the 'essential goal' of lawsuits also seeking equitable relief." ).

Ignoring these precedents, Plaintiff asks the Court to pretend that restitution is a form of injunctive relief for purposes of Rule 23(b)(2), citing no authority. Not surprisingly, that argument has been rejected. In *In re Paxil Litig.*, 218 F.R.D. 242, 247 (C.D. Cal. 2003), plaintiffs brought a UCL claim for restitution and argued Rule 23(b)(2) should apply because restitution amounts to equitable relief. The court rejected that argument explaining that "[t]he distinction made in Rule 23(b)(2), however, is not one between equitable remedies and compensatory damages; rather, it is between 'final injunctive relief or corresponding declaratory relief with respect to the class as a whole' and all other forms of relief." *Id*. Similarly here, Plaintiff's focus on restitution confirms that these cases cannot be considered under Rule 23(b)(2) standards.

## IV. CONCLUSION

For all these reasons, Defendant respectfully requests that Plaintiff's Motion for Class Certification be denied.

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

25.

DEFENDANT EBAY'S OPP TO PLAINTIFF EWERT'S MOTION FOR CLASS CERTIFICATION
CASE NO. 07-CV-02198-RMW (PVT)

Respectfully submitted,

Dated: January 28, 2010

COOLEY GODWARD KRONISH LLP
MICHAEL G. RHODES
WHITTY SOMVICHIAN

**/s/ Whitty Somvichian**

Attorneys for Defendant eBay, Inc.